ADAMS, Justice.
West Alabama Remodeling, Inc., brought an action against the various defendants herein, seeking declaratory and injunctive relief and damages. The trial court granted summary judgment for all defendants. The record on appeal indicates that there are material questions of fact and defendants are not entitled to judgment as a matter of law; therefore, we reverse and remand.
Plaintiff West Alabama Remodeling was second lowest bidder on a project of renovation of the North Alabama Regional Hospital in Decatur. The lowest bidder, Miller Electric Company of Huntsville, Inc., (Miller) has a specialty construction license, one of the classifications of licenses published by the Alabama State Licensing Board for General Contractors (the Licensing Board).[1] After bids were opened on February 27, 1980, West Alabama Remodeling notified the Mental Health and Licensing Boards of its opinion that Miller was not qualified to perform the contract. On March 5, 1980, the Licensing Board held a hearing and determined that Miller was properly licensed to bid on this job. On March 27, *768 1980, the Mental Health Board awarded the contract to Miller.
In June 1980, West Alabama Remodeling sued Glenn Ireland as Commissioner of Mental Health, Fob James as Receiver of the Mental Health System, L. Ray Clark as purchasing agent of the Department of Mental Health, the Mental Health Board, and the Department of Mental Health (collectively referred to as the Mental Health defendants); plaintiff also named Miller and the Licensing Board as defendants. The essence of the complaint is a claim that Miller is not properly licensed to bid on the project as a general contractor, and that West Alabama Remodeling is entitled to relief because it should have been awarded the contract.
The Licensing Board’s determination that Miller was properly licensed for this job hinged upon its policy that a project will be classified by the type of work which constitutes 51% or more of the cost of the project (the 51%-of-the-job rule). The mechanical, sheet metal, electrical, and heating and air conditioning work constitutes 60-80% of this renovation project. Miller’s license reads: “Specialty: (Mechanical, Electrical, Sheet Metal, Heating and Air Conditioning) and work incidental thereto.” Thus, the Licensing Board determined that Miller was properly licensed for this job because it is qualified to perform work which constitutes more than 51% of the project.
The dispute in this case centers on the 51%-of-the-job rule — whether it should be applied to Miller, who held a license under Specialty Construction. This issue arises because to bid on and perform the contract, Miller had to be properly licensed under Code 1975, § 34-8-1, et seq. West Alabama Remodeling contends that this project is a building construction project and, therefore, only a general contractor with a building construction classification should be awarded the prime contract. See Code 1975, §§ 34-8-1 and -9. The Mental Health Board referred West Alabama Remodeling’s challenge to the Licensing Board, which advised that Miller was properly licensed to perform this job, basing its decision on the 51%-of-the-job rule.
West Alabama Remodeling complains that the 51%-of-the-job rule has never been published so as to give notice to contractors of this policy, and further, that the policy, at least as applied here, does not promote the licensing law’s purpose of safeguarding life, health and property. Id., § 34-8-20. The 51%-of-the-job rule, therefore, says plaintiff, is beyond the Licensing Board’s power under Code 1975, § 34^-8-22, since it is in conflict with the general purpose of the statutes dealing with contractors. One of the duties of a prime contractor is to superintend other contractors, and West Alabama Remodeling argues that there is no reason to suppose specialty contractors will be qualified for such supervision, and such qualification is a factor considered by the Licensing Board in granting a contractor’s license. In four of the five categories of contractors set out in the Licensing Board’s only publication, the contractor is allowed to perform work incidental to the major undertaking. This is not provided for in the specialty category. These arguments are supported by the affidavit of Henry T. Hagood, Executive Secretary for the Alabama Branch of the Associated General Contractors of America, Inc., who states that “The basic rationale for this thinking is that each of the contractors under [the] four general classifications are accustomed to coordinating multiple numbers of specialty contractors on projects.”
Miller counters that its license is that of a general contractor with a specialty classification and that it is qualified to superintend the work on this project for which it is not licensed. Indeed, West Alabama Remodeling acknowledges that Miller is a capable contractor and there is even some indication that Miller has by this time satisfactorily completed a substantial portion of the project. The dispute, therefore, is more generally whether the 51%-of-the-job rule is a proper method of classification, at least with respect to specialty contractors.
The Licensing Board argues that it has long applied its 51%-of-the-job rule and that this is a matter of common knowledge; *769 however, this claim is made in conclusory terms and there is no evidence in the record to back it up. West Alabama Remodeling contends that because the rule is not published, it cannot support a summary judgment. We do not find it necessary to inquire at this point as to proper publication of this rule, because there is a question as to whether the rule is substantively appropriate as applied to specialty contractors and because the future applicability of the rule will be governed by the new Alabama Administrative Procedure Act, Code 1975, §§ 41-22-1 through -27, the major provisions of which are not yet in effect.
Because there is a genuine issue of material fact as to whether a specialty contractor should be awarded a contract on a large project simply because its specialties cover more than half of the work cost, we believe summary judgment was inappropriate. We can see how the rule would properly apply among the other four classifications — for instance, a utility contractor supervising a component of a job that would normally be done by a building construction contractor — and yet not properly apply to specialty contractors who might have no supervision experience. On remand, defendants will have the opportunity to show that the award of the renovation contract is consistent with the purpose and policy of the contractors’ statute.
Summary judgment in favor of defendants is due to be reversed and this cause remanded for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
FAULKNER, ALMON and EMBRY, JJ., concur.
TORBERT, C. J., concurs specially.

. The only publication of the Licensing Board is its “Roster of Licensed Contractors”; see Code 1975, § 34-8-26. It includes the following table:
CLASSIFICATIONS OF LICENSES
BUILDING CONSTRUCTION: Shall include the construction of building structures, including modifications thereof, or additions and repairs thereto, intended for use for shelter, protection, comfort or convenience. Building construction shall include the excavation and foundations for building construction and work incidental thereto.
HIGHWAYS AND STREETS: Shall include the construction of roads, streets, alleys, sidewalks, curb and gutter guard rails, fences, parkways, parking areas, runways, bridges, grading, draining, and all other types incidental thereto.
MUNICIPAL AND UTILITY: Shall include clearing, grubbing, grading, paving, curbs, gutters, walks, driveways, swimming pools, sewer projects, water projects, gas projects, electric project [sic], telephone projects and work incidental thereto.
HEAVY AND RAILROAD CONSTRUCTION: Shall include the construction of railroads, bridges, foundations, pile driving, piers, abutments, retaining walls, viaducts, tunnels, subways, drainage projects, aqueducts, irrigation projects, flood control projects, water power development, hydro-electric development, transmission lines, pipe lines, locks, dams, dikes, levees, revetments, channels, breakwaters, docks, harbors, industrial projects, excavation, clearing, grubbing, and any other work incidental to the above types.
SPECIALTY CONSTRUCTION: Is defined as any work in connection with construction requiring special skill and the use of specially skilled trades or crafts or any particular parts of the work described iri either of the above four classifications or any typs [sic] desired, such as:
Mechanical Roofing and Siding
Electrical Floor Covering
Sheet Metal Heating and Air-Conditioning
Masonry Bridges
Painting Other